**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LUMIO HOLDINGS, INC., *et al.*,[1] | : | Case No. 24-11916 (JKS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ----------------------------------------------------------x | | |
| | : | |
| JEFFREY T. VARSALONE, in his capacity as | : | |
| LIQUIDATING TRUSTEE of the LUMIO | : | |
| LIQUIDATING TRUST | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No._____(JKS) |
| | : | |
| DECA LIVING, LLC, ZENITH SECURITY, | : | |
| LLC, ZENITH SOLAR, LLC, JOHN | : | |
| BANKHEAD, OSCAR LUNA, and CODI | : | |
| NUKAYA | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ----------------------------------------------------------x | | |

**ADVERSARY COMPLAINT**

Plaintiff, Jeffrey T. Varsalone, solely in his capacity as liquidating trustee of the Lumio

Liquidating Trust (the "*Trustee*" or "*Plaintiff*" and Lumio Liquidating Trust, the "*Trust*") duly

appointed in the chapter 11 cases of Lumio Holdings, Inc. and Lumio HX, Inc. (together, the

"*Debtors*" or "*Lumio*"), by and through his undersigned counsel, hereby files this Adversary

Complaint (the "*Complaint*") against DECA Living, LLC ("*DECA*"), Zenith Security, LLC

("*Zenith Security*"), Zenith Solar, LLC ("*Zenith Solar*", collectively with DECA and Zenith

Security, the "*DECA Sellers*"), John Bankhead ("*Bankhead*"), Oscar Luna ("*Luna*") and Codi

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Liquidating Trustee's headquarters is located at 1550 W Digital Drive, Suite 200, Lehi, UT 84043.

Nukaya ("*Nukiya*", and collectively with the DECA Sellers, Bankhead and Luna, "*Defendants*") to recover damages for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty.  In support of this Adversary Complaint, Plaintiff hereby avers the following:

## NATURE OF THE CASE

1.    In December 2021, Lumio was created through a strategic combination of four regional residential solar businesses in Utah to deliver top-tier residential solar solutions to customers across the nation.  One of those businesses was the DECA Sellers, whose founders were Bankhead, Luna and Nukaya (the "*Founders*").  In bringing the DECA Sellers into Lumio, the parties entered into an asset purchase agreement (the "*APA*") and the Founders stayed on as critical officers and employees of Lumio.

2.    Following the combination, unbeknownst to Lumio, the Founders engaged in systematic and serious malfeasance for their own personal gain, leading to the bankruptcy of the Company.

3.    In particular, as a result of an investigation that is ongoing, Plaintiff discovered that the Founders: (1) used Lumio credit cards for hundreds of thousands of dollars in personal expenses; (2) kept over $1.6 million in accounts receivables due to the Company for themselves; and (3) permitted third-parties to wrongfully claw back over $3 million of funds owed by the DECA Sellers from accounts receivables paid to Lumio.

4.    As late as January 2023, the Founders were well-aware of these financial improprieties and wrongdoing, yet refused to pursue or prosecute any remedies on behalf of Lumio.  This failure resulted in millions of dollars in damages to Lumio, while breaching the duties Bankhead and Luna owed to Lumio as directors and officers.

5.      To add insult to injury, the Founders violated the APA and their Employment Agreements on their way out the door by wrongfully soliciting Lumio customers, contractors and employees while working for a direct competitor of Lumio.  In essence, the Founders stole the blueprints for the business on their way out the door.

6.      Plaintiff now seeks a judgment and respectfully request that this Court: (1) find Defendants liable to Plaintiff for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty; (2) award damages in an amount to be determined, but no less than $4,410,394; (3) award pre- and post-judgment interest and attorneys' fees; and (4) grant such other and further relief as the Court deems just and proper.

## JURISDICTION, VENUE, AND CHOICE OF LAW

7.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 12, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

8.      Pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure and rule 7008-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to entry of a final judgment or order with respect to the Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     Delaware law governs Plaintiff's claims arising under the APA and Plaintiff's claims for breaches of fiduciary duties.  *See* Ex. 1, § 8.9.

11. Utah law governs Plaintiff's claims arising under the Employment Agreements and Restrictive Covenant Agreements (as defined below). *See* Exs. 2, 4, 5, 7, § 14; Exs. 3, 6, § 7.10; Ex. 8 § 8.

12. Under Section 9.3 of the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Lumio Holdings, Inc. and Lumio HX, Inc.* [Docket No. 496-1], the Trustee has the authority to bring the causes of action contained in this Complaint and to otherwise administer the Liquidating Trust.

## PARTIES

13. Plaintiff is Jeffrey T. Varsalone, solely in his capacity as the Liquidating Trustee of the Trust.

14. The Liquidating Trust is organized under the laws of the State of Delaware.

15. Defendant DECA is a limited liability company organized under the laws of the State of Texas.

16. Defendant Zenith Security is a limited liability company organized under the laws of the State of Idaho.

17. Defendant Zenith Solar is a limited liability company organized under the laws of the State of Texas.

18. Upon information and belief, Defendant Bankhead is an individual and citizen of the State of Texas.

19. Upon information and belief, Defendant Luna is an individual and citizen of the State of Texas.

20. Upon information and belief, Defendant Nukaya is an individual and citizen of the State of Texas.

## FACTUAL BACKGROUND

**A.      Lumio's Formation and the Asset Purchase Agreement.**

21.     Lumio a leader in personalized renewable energy, delivering top-tier residential solar solutions to their customers across the nation.

22.     Lumio was founded in December 2021 through the strategic combination of four regional residential solar businesses: (1) DECA Sellers, (2) Lift Energy Construction, Inc. ("*LIFT*"), (3) Smart Energy Today, Inc. ("*SET*"), and Atlantic Key Energy, LLC ("*AKE*").

23.     To effectuate the strategic combination, Lumio entered into four separate asset purchase agreements with each of the DECA Sellers, LIFT, SET, and AKE, effective December 10, 2021, whereby Lumio purchased, *inter alia*, certain of each company's most essential assets – the entire guts and business blueprints for the company, including without limitation, all confidential and proprietary information, strategic plans, pricing information, customer data, vendor data and information, manufacturer data and information, receivables, rights to payments, and contracts.

24.     The APA was entered into between (1) Lumio, as buyer, (2) Bankhead and Luna, as DECA shareholders, and (3) the DECA Sellers.  A true and correct copy of the APA is attached hereto as **Exhibit 1**.

25.     Pursuant to the APA, Lumio paid the DECA Sellers approximately $44.2 million in exchange for the DECA Sellers' rights, title, and interest in the certain "Assigned Assets" defined in the agreement.  *See* Ex. 1 § 1.1.

26.     The Assigned Assets Lumio purchased included, *inter alia*, (1) the DECA Sellers' material contracts; (2) the DECA Sellers "accounts, notes, and other receivables, including any prepayments and prepaid expenses"; (3) "[a]ll rights to payment, including all accounts receivable, deposits, prepaid expenses and amounts to be received for purchase orders not yet paid related to"

the DECA Sellers' business; and (4) "[a]ll contracts of [the DECA Sellers] relating to [its] Business, including but not limited to customer contracts relating to the installation, maintenance, supplier contracts, ongoing service obligations, warranties and guarantees given to customers/clients of" the DECA Sellers.  *See* Ex. 1 § 1.1(a)(i), (ii), (vi), (ix).

**B.      The Founders Are Employed by Lumio as Directors and Officers.**

27.      Following the APA, Bankhead, Luna and Nukaya became directors and officers in Lumio.

28.      On or about December 10, 2021, in connection with and as a condition precedent to the closing of the transaction contemplated by the APA, Bankhead and Lumio entered into: (i) an Employment Agreement pursuant to which Bankhead would be employed as Lumio's Senior Vice President of Sales in exchange for a base salary of $250,000 per year (the "*2021 Bankhead Employment Agreement*"); and (ii) an Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions (the "*Bankhead Restrictive Covenant Agreement*").  A true and correct copy of the 2021 Bankhead Employment Agreement and Bankhead Restrictive Covenant Agreement are attached hereto as **Exhibits 2 and 3**, respectively.

29.      On or about June 9, 2023, Bankhead entered into a subsequent employment agreement with Lumio pursuant to which he would continue to be employed by Lumio as its Senior Vice President of Sales over Lumio's Central Division (the "*2023 Bankhead Employment Agreement*").  A true and correct copy of the 2023 Bankhead Employment Agreement is attached hereto as **Exhibit 4.**

30.      The 2023 Bankhead Employment Agreement attached and incorporated the Bankhead Restrictive Covenant Agreement.  *See* Ex. 4 § 9, Ex. B.

31.      On or about December 10, 2021, in connection with and as a condition precedent to the closing of the transaction contemplated by the APA, Luna and Lumio entered into: (i) an

Employment Agreement pursuant to which Luna would be employed as Lumio's Senior Vice President of Sales in exchange for a base salary of $250,000 per year (the "*2021 Luna Employment Agreement*"); and (ii) an Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions (the "*Luna Restrictive Covenant Agreement*").  A true and correct copy of the 2021 Luna Employment Agreement and Luna Restrictive Covenant Agreement are attached hereto as **Exhibits 5 and 6**, respectively.

32.     On or about June 9, 2023, Luna entered into a subsequent employment agreement with Lumio pursuant to which Luna would continue to be employed by Lumio as its Senior Vice of Sales over Lumio's Central Division (the "*2023 Luna Employment Agreement*").  A true and correct copy of the 2023 Luna Employment Agreement is attached hereto as **Exhibit 7.**

33.     The 2023 Luna Employment Agreement attached and incorporated the Luna Restrictive Covenant Agreement.  *See* Ex. 7 § 9, Ex. B.

34.     On or about December 21, 2021, Nukaya entered into an offer letter with pursuant to which he would be employed as Lumio's Director of Operations in exchange for a base salary of $295,000 per year (the "*Nukaya Offer Letter*", together with the 2021 Bankhead Employment Agreement, the 2023 Bankhead Employment Agreement, the 2021 Luna Employment Agreement, and the 2023 Luna Employment Agreement, the "*Employment Agreements*").  A true and correct copy of the Nukaya Offer Letter is attached hereto as **Exhibit 8**.

35.     Pursuant to Section 9(a) of the Nukaya Offer Letter, Nukaya agreed to, and upon information did, execute Lumio's standard an Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions as a condition of his employment thereunder (the "*Nukaya Restrictive Covenant Agreement*", together with the Bankhead Restrictive Covenant

7

Agreement and the Luna Restrictive Covenant Agreement, the "*Restrictive Covenant Agreements*").

**C.      The Founders Engage in Significant Malfeasance and Self-Dealing as Officers and Directors of Lumio and the DECA Sellers Breach the Asset Purchase Agreement.**

36.      Throughout the course of their time as officers and directors of Lumio, Bankhead, Luna and Nukaya engaged in a pattern of self-dealing and misuse of corporate funds that violated Lumio policies and the duties they owed to the company.

37.      Following the closing of the APA, the DECA Sellers failed to remit accounts receivable payments due and owing to Lumio in violation of the parties' agreement.

I.      *Bankhead, Luna and Nukaya, as Lumio Officers and Directors, Charge $732,430.12 in Personal Expenses to Lumio Corporate Credit Cards.*

38.      As officers and directors of Lumio, Bankhead, Luna and Nukaya received Lumio corporate credit cards to use for business purposes.

39.      Bankhead, Luna and Nukaya abused and misused their corporate credit cards by charging Lumio for personal expenses that did not warrant reimbursement.

40.      Upon information and belief, during his time as a Lumio officer and director, Bankhead charged $158,488.00 in personal expenses to his Lumio corporate credit card.

41.      Upon information and belief, during his time as a Lumio officer and director, Luna charged $141,799.00 in personal expenses to his Lumio corporate credit card.

42.      Upon information and belief, during his time as a Lumio officer and director, Nukaya charged $371,473 in personal expenses to his Lumio corporate credit card.

43.      Upon information and belief, on or about December 21, 2022, and during their time as Lumio officers and directors, Bankhead and Luna also used their Lumio corporate credit cards to pay $60,670.12 ($30,335.06 each) to the law firm Crawford, Wishnew & Lang PLLC.

44.    Upon information and belief, these payments were legal fees associated with a driving under the influence charge against Luna.

45.    Bankhead, Luna and Nukaya's misuse of their corporate credit cards violated both the Employment Agreements and the duty they owed to Lumio as directors and officers to not place their own interests above the best interests of the company.

II.    *Bankhead Facilitates Fraudulent Commission Payments to Purported "Vendor."*

46.    From May 10, 2022 to October 6, 2023, Lumio paid vendor Lone Star Home Experience ("*Lone Star*") a total of $387,123.05 in commission payments.

47.    After investigation by the Company, however, it was determined that Lone Star was not performing any services for Lumio and should not have received any commission payments.

48.    Upon information and belief, Bankhead set up Lone Star to receive regular commission payments from Lumio.

49.    Lone Star is not a Lumio vendor but, upon information and belief, rather a provider of nanny services.

50.    Accordingly, upon information and belief, Bankhead set up and facilitated the wrongful payments from Lumio to Lone Star for personal nanny services under the guise of commission payments.

III.    *The DECA Sellers and the Founders, as Lumio Officers and Directors, Retain $1,666,943 in Receivables Due to Lumio.*

51.    Pursuant to the APA, the DECA Sellers agreed to "sell, contribute, convey, and/or assign to Lumio" the DECA Sellers' "rights, title, and interest, of every kind and nature in and to the Assigned Assets, in each case free and clear of all Liens other than Permitted Liens." *See* Ex. 1 § 1.1.

9

52.    Among other things, the DECA Sellers' Assigned Assets under the APA included "certain Material Contracts listed on Schedule 1.1(a)(i)" of the APA.  *See* Ex. 1 § 1.1(a)(i).

53.    Included within the Assigned Material Contracts in Schedule 1.1(a)(i) were the (1) Goodleap Home Improvement Financing Program Agreement, dated August 26, 2021, between Goodleap, LLC ("*Goodleap*") and Zenith Security; (2) Goodleap Home Improvement Financing Program Agreement, dated July 1, 2021, between Goodleap and Zenith Security; and (3) LoanPal Solar/Storage Financing Program Agreement, dated April 23, 2020, between LoanPal (now Goodleap) and Zenith Security (together, the "*Goodleap Agreements*").  *See* Ex. 1, Schedule 1.1(a)(i)(1).

54.    The DECA Sellers' Assigned Assets under the APA also included (1) the DECA Sellers' "accounts, notes, and other receivables," (2) "[a]ll rights to payment, including accounts receivable, deposits, prepaid expenses and amounts to be received for purchase orders not yet paid related to the [DECA Sellers'] Business," and (3) all of the DECA Sellers' contracts "relating to the Business, including but not limited to customer contracts relating to the installation, maintenance, supplier contracts, ongoing service obligations, warranties and guaranties given to customers/clients of" the DECA Sellers.  *See* Ex. 1 § 1.1(a)(ii), (vi), (ix).

55.    Thus, pursuant to several provisions of the APA, Lumio purchased and received from the DECA Sellers the rights, title, and interest in the Goodleap Agreements, including, but not limited, to any and all accounts receivable thereunder.

56.    After the closing of the APA, the DECA Sellers and the Founders received $1,666,943.00 in payments for accounts receivable under the Goodleap Agreements.

57.    The $1,666,943.00 in payments for accounts receivable under the Goodleap Agreements belonged to Lumio pursuant to the sale and assignments set forth in the APA.

58.     Rather than remitting those payments to Lumio as required under the APA, the DECA Sellers and the Founders retained the payments for the DECA Sellers.

IV.     *The DECA Sellers and the Founders, as Lumio Officers and Directors, Permit the Continued Claw Back of $3.2 Million in Funds Due to Lumio.*

59.     In addition to failing to remit accounts receivable payments due and owing to Lumio, the DECA Sellers and the Founders also permitted the claw back of funds from accounts receivable payments to Lumio based on pre-closing conduct for which the DECA Sellers were liable.

60.     In making accounts receivable payments to Lumio, Goodleap deducted amounts based on the pre-closing conduct of the DECA Sellers and the Founders.

61.     As of March 31, 2024, Goodleap clawed back approximately $3.2 million from Lumio in accounts receivable payments based on the pre-closing conduct of the DECA Sellers and the Founders.

62.     Pursuant to the terms of the APA, Lumio purchased, was assigned, and was entitled to retain these clawed back payments.

63.     Neither the DECA Sellers nor the Founders reimbursed Lumio for these clawed back amounts.

V.     *The Founders, as Lumio Officers and Directors, Refuse to Seek Redress for Non-Payment of Funds Owed to Lumio.*

64.     Throughout the course of their time as Lumio offices and directors, and at a minimum, the beginning of 2023, the Founders were aware of (1) Bankhead and Luna's misuse of Lumio corporate credit cards, (2) the DECA Sellers' retention of accounts receivable payments due and owing to Lumio, and (3) Goodleap's claw back of funds owed by the DECA Sellers from accounts receivable payments due and owing to Lumio.

11

65.    In or around January 2023, the Founders were notified by Lumio's finance team that the Company was facing significant shortfalls in accounts receivable payments, including from Goodleap.

66.    Rather than pursuing a solution or litigation, the Founders, as Lumio officers and directors, refused to seek redress or repayment from the DECA Sellers or Goodleap.

67.    The Founders chose not to pursue a solution or litigation because this would have been, in essence, pursuing a solution or litigation against themselves for their own conduct.

**D.    The Founders Breach the Restrictive Covenants in the APA and the Restrictive Covenant Agreements.**

68.    Pursuant to Section 7.7 of the APA, Bankhead and Luna each covenanted and agreed, among other things, that for "period commencing on the Closing Date [i.e., December 10, 2021] and continuing until the date that is the four-year anniversary of the Closing Date [i.e., December 10, 2025]" (the "*APA Restricted Period*"), and within the geographic boundaries of the United States of America, each would refrain from the following activities: "directly or indirectly, in any manner (whether on Seller's own account, or as an owner, operator, manager, consultant, officer, director, employee, investor, agent or otherwise) . . . engage directly or directly in the Business", or own any interest in, manage, control, participate in (whether as an owner operator, manager, consultant, officer, director, employee, investor, agent, representative or otherwise), or consult with or render services for any Person that is engaged in the Business, provided however, that no owner of less than 2% of the outstanding stock of any publicly traded corporation shall be deemed to engage solely by reason thereof in its business." Ex. 1 § 7.7(a), (b).

69.    Pursuant to Article 7.7 of the APA, Bankhead and Luna also agreed and covenanted, among other things, that "During the Restricted Period, the Seller will not, directly or indirectly, in any manner (whether on his own account, as an owner, operator, manager, consultant,

12

officer, director, employee, investor, agent or otherwise), (a) call upon, solicit or provide services to any Person that is or was affiliated with the Company in any way with the intent of selling or attempting to sell services related to the Business, (b) hire or engage or recruit, solicit or otherwise attempt to employ or engage or enter into any business relationship with any Person employed by Lumio or any of its Subsidiaries, to induce or attempt to induce any Person to leave such employment, or (c) in any way interfere with the relationship between Lumio or its Subsidiaries and any employee, vendor or other Person with a current, former or prospective business relationship with Lumio or its Subsidiaries (including, without limitation, by making any negative or disparaging statements or communications regarding Lumio, any of its Subsidiaries or any of their operations, officers, director or investors)[.]"  Ex. 1 § 7.7(c).

70.     The APA defines "Business" as the "marketing, designing, selling, financing, installing and maintaining state-of-the-art residential and/or commercial photovoltaic solar systems and storage batteries and related and ancillary products and services."  Ex. 1, p. 1.

71.     Bankhead and Luna agreed that "the character, periods and geographical area and the scope of the restrictions on the Seller activities in [Section 7.7 of the APA] are fair and reasonably required for the protection of Lumio and its Affiliates."  Ex. 1 § 7.7(e)

72.     Section 7.7 of APA provides that "[i]n the event of litigation involving this Section, the non-prevailing party shall reimburse the prevailing party for all costs and expenses, including reasonable attorneys' fees and expenses, incurred in connection with any such litigation, including any appeal therefrom."  Ex. 1 § 7.7(d).

73.     Pursuant to their respective Restrictive Covenant Agreements with Lumio, the Founders agreed to not directly or indirectly compete with Lumio during the term of the Agreement

13

or for a period of one year from the date of the termination in any geographic area where Lumio does business as of the termination date.  *See* Exs. 3, 6, § 4.1.

74.     "Directly or indirectly" competing under the Restrictive Covenant Agreements included (1) owning, managing, operating, or controlling, (2) participating in the ownership, management, operation, or control of, or (3) being connected with or having any interest in, as a stockholder, director, officer, or employee, any business which is the same as or a direct market competitor of any business that is conducted by Lumio or any of its subsidiaries at the time of the termination date.  *See* Exs. 3, 6, § 4.2.

75.     Each of the Founders agreed that the non-compete covenants in their Employment Agreements were reasonable and necessary for the goodwill of Lumio.  *See* Exhibits 2-5, Employment Agreements, Ex. B § 4.3.

76.     The Founders also agreed that they would not, for one year following their termination of employment, directly or indirectly solicit or attempt to solicit the business of any of the customers or clients of Lumio who became known to them while employed by Lumio if such solicitation is competitive with the business of Lumio.  *See* Exs. 3, 6, § 6.5.

77.     The Employment Agreements further provided that the Founders would not, for one year following their termination of employment, directly or indirectly solicit or attempt to solicit the services of any Lumio employees, nor would the Founders directly or indirectly hire any Lumio employees.  *See* Exs. 3, 6, § 6.5.

78.     Section 14 of Bankhead and Luna's Employment Agreements provides that "the prevailing party in any litigation relating to the interpretation or enforcement of this Agreement shall be entitled to reasonable costs and attorneys' fees."  *See* Exs. 3, 6, § 14.

79.     Bankheads's employment with Lumio terminated on or about August 14, 2024.

14

80. Luna's employment with Lumio terminated on or about September 12, 2023.

81. Nukaya's employment with Lumio terminated on or about November 10, 2023.

82. Upon information and belief, within one year of their termination of employment with Lumio, and during the APA Restricted Period, the Bankhead, Luna and Nukaya became employed by, provided services to, or held ownership interests in Mio Home LLC ("*Mio Home*"), a company offering services directly competitive to Lumio, and solicited Lumio employees and customers on behalf of Mio Home.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – Failure to Remit Accounts Receivable Under the APA)**
*Against the DECA Sellers, Bankhead, and Luna*

83. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

84. The APA is a valid and enforceable contract.

85. Lumio performed all of their obligations under the APA.

86. The DECA Sellers, Bankhead, and Luna breached the APA by failing to remit accounts receivable payments and other payments received post-Closing to Lumio, as required by the APA.

87. As a direct and proximate result of the DECA Sellers, Bankhead, and Luna's breach, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $4,866,943.

**SECOND CAUSE OF ACTION**
**(Conversion)**
*Against the DECA Sellers, Bankhead, Luna, and Nukaya*

88.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

89.     Pursuant to the terms of the APA, Lumio has the post-closing right to the possession of accounts receivable and other payments and interests in certain Assigned Material Contracts.

90.     Included within the Assigned Material Contracts are the DECA Sellers' contracts with Goodleap.

91.     The DECA Sellers, Bankhead, and Luna have wrongfully exercised dominion and control over the funds due and owing from Goodleap to Lumio.

92.     Bankhead, Luna and Nukaya have also wrongfully exercised dominion and control over the funds due and owing to Lumio for personal expenses charged to their corporate credit cards.

93.     The DECA Sellers, Bankhead, Luna and Nukaya refuse to remit these wrongfully held funds to Lumio.

94.     As a direct and proximate result, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $5,599,373.12.

**THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**
*Against the DECA Sellers, Bankhead, Luna and Nukaya*

95.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

96.     Pursuant to the terms of the APA, Lumio has the post-closing right to the possession of accounts receivable and other payments and interests in certain Assigned Material Contracts.

16

97. Included within the Assigned Material Contracts are the DECA Sellers' contracts with Goodleap.

98. The DECA Sellers, Bankhead, and Luna have wrongfully retained the funds due and owing from Goodleap to Lumio.

99. Bankhead, Luna and Nukaya wrongfully retained, and failed to reimburse Lumio for, funds due and owing to Lumio for personal expenses charged to their corporate credit cards.

100. The DECA Sellers, Bankhead, Luna, and Nukaya refuse to remit these wrongfully held funds to Lumio.

101. The DECA Sellers, Bankhead, Luna and Nukaya have been unjustly enriched.

102. It is inequitable to permit the DECA Sellers, Bankhead, Luna and Nukaya to retain these wrongfully held funds.

103. As a direct and proximate result of the DECA Sellers, Bankhead, Luna and Nukaya's wrongful retention, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $5,599,373.12.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
*Against Bankhead, Luna and Nukaya*

104. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

105. As officers and/or directors of Lumio, Bankhead, Luna and Nukaya owed fiduciary duties of care, loyalty, and good faith to Lumio.

106. Bankhead, Luna and Nukaya breached these duties by misappropriating corporate funds, using corporate credit cards for personal expenses, and failing to remit funds owed to Lumio.

17

107. Bankhead, Luna and Nukaya further breached these duties by, as late as January 2023, failing to seek redress or resolution or pursue litigation related to the DECA Sellers' misappropriation of corporate funds, the DECA Sellers' failure to remit funds owed to Lumio, and the DECA Sellers' claw back of funds owed by the DECA Sellers from accounts receivable payments to Lumio.

108. As a direct and proximate result, Plaintiff has suffered damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – Breach of APA Non-Compete)**
*Against Bankhead and Luna*

109. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

110. The APA is a valid and enforceable contract.

111. Lumio performed all of their obligations under the APA.

112. Bankhead and Luna breached the APA by, during the period between the Closing Date of the APA and the four-year anniversary of the Closing Date (i.e., December 10, 2021 – December 10, 2025): (i) being employed by and/or providing services to a direct competitor; (ii) soliciting and hiring Lumio employees to work for a competitor; (iii) soliciting Lumio customers on behalf of a direct competitor; and/or (iv) possessing and maintaining an ownership interest in a competitor.

113. As a direct and proximate result of Bankhead's and Luna's breaches, Plaintiff has suffered damages in an amount to be determined at trial.

18

## SIXTH CAUSE OF ACTION
**(Breach of Contract – Employment Agreements & Restrictive Covenant Agreements)**
*Against Bankhead, Luna and Nukaya*

114.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

115.    The Employment Agreements and Restrictive Covenant Agreements are valid and enforceable contracts.

116.    Lumio performed all of its obligations under the Employment Agreements and Restrictive Covenant Agreements.

117.    Bankhead, Luna and Nukaya breached their respective Employment Agreements and Restrictive Covenant Agreements by, during their employment with Lumio and/or within one year following the termination of their employment: (i) being employed by and/or providing services to a direct competitor; (ii) soliciting and hiring Lumio employees to work for a competitor; (iii) soliciting Lumio customers on behalf of a direct competitor; and/or (iv) possessing and maintaining an ownership interest in a competitor.

118.    As a direct and proximate result of Bankhead's, Luna's and Nukaya's, Plaintiff has suffered damages in an amount to be determined at trial.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an order:

A.    Finding Defendants liable to Plaintiff for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty;

B.    Awarding damages in an amount to be determined resulting from Defendants' breach of contract, conversion, unjust enrichment, and breach of fiduciary duty;

C.    Awarding attorneys' fees, litigation costs and expenses, and interest; and

D.    Granting Plaintiff such other and further relief as the Court deems just and proper.

19

Dated: August 27, 2025

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Robert J. Dehney, Sr. (No. 3578)
Matthew O. Talmo (No. 6333)
Brenna A. Dolphin (No. 5604)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@morrisnichols.com
mtalmo@morrisnichols.com
bdolphin@morrisnichols.com

*-and-*

**DLA PIPER LLP (US)**
Joseph A. Piesco (*pro hac vice* application forthcoming)
Edward Rooker (*pro hac vice* application forthcoming)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: Joseph.Piesco@us.dlapiper.com
Edward.Rooker@us.dlapiper.com

*Counsel to the Liquidating Trust*