**Exhibit 3**

**AGREEMENT REGARDING CONFIDENTIALITY,
NON-COMPETITION, AND ASSIGNMENT OF INVENTIONS**

This Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions ("*Agreement*") is made and entered into as of this 10th day of December, 2021 (the "*Effective Date*") by and between John Bankhead (referred to below in the first person) and Lumio HX, Inc., a Delaware corporation (the "*Company*"). For the consideration recited below, and in recognition that the goodwill, trade secrets and confidential information of Company, its clients and third parties require protection from unauthorized use and disclosure, I agree to the following terms and conditions:

1.      CONSIDERATION.  I recognize and acknowledge that I have received adequate and sufficient consideration in exchange for my signature on this agreement.  Consideration consists of one or more of the following: (a) my hire, salary increase, bonus, or promotion; (b) continued employment, where legally permissible; (c) access to the Company's Confidential Information (defined below); (d) the benefits of the Company's goodwill, including introductions to the Company's customers and business partners; (e) training in the Company's know-how and unique techniques and methods; and/or (f) the terms and conditions of and benefits received under this Agreement.

2.      CONFIDENTIALITY

2.1     Confidential Information.  I recognize that the Company now possesses or will possess information of a confidential or secret nature in both written and unwritten form which has unique commercial value in the business in which the Company is engaged (hereinafter referred to as "*Confidential Information*"). Confidential Information for this purpose includes but is not limited to trade secrets, processes, computer programs, methods, data, know-how, improvements, inventions, techniques, marketing plans, product plans, strategies, forecasts, and customer lists, whether developed by me or others and whether belonging to the Company or to any of its customers or suppliers. The term Confidential Information shall not mean: (a) any information that is known by me upon my employment, without an obligation of confidence; or (b) any information that is publicly disclosed by the Company. I understand that my employment with the Company creates a relationship of trust and confidence between me and the Company with respect to the Confidential Information that I may learn or develop as a result of my employment with the Company.

2.2     Ownership and Assignment.  I agree that all Confidential Information is the sole property of the Company and its assigns.  I will promptly disclose all Confidential Information to the Company upon request, and I assign to the Company any rights which I may have or which I may acquire in any Confidential Information.

2.3     Obligation Not to Disclose.  At all times, both while I am employed with the Company and after the termination of my employment with the Company, I will keep in strict confidence all Confidential Information and I will not use or disclose any Confidential Information or anything relating to it in whole or in part, nor permit others to use or disclose it in any way, without the prior written consent of the Company, except as may be necessary in the ordinary course of performing my duties as an employee of the Company.  I further agree to inform the Company immediately in writing in the event of any breach of this obligation of confidentiality.

2.4     Obligations upon Termination of Employment. Upon termination of my employment with the Company for any reason, I will promptly deliver to the Company all materials, documents, data, equipment (however, if such equipment is personally owned, then, in such event, I will retain ownership and shall disclose to the Company and subsequently erase or delete any and all Confidential Information from such personal equipment), and other physical property of any nature containing or pertaining to any Confidential Information, and I will not take with me from the Company's premises any such material or equipment or any reproduction thereof.

2.5     Third Party Information. I recognize that the Company has received and will receive confidential or proprietary information from third parties. I will hold all such information in confidence and will not use the information or disclose it to anyone except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.     NOTICE OF IMMUNITY. I understand that I cannot be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Additionally, an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual: (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret, except pursuant to court order.

4.     COVENANT NOT TO COMPETE

4.1     Covenant. I agree that I will not directly or indirectly compete with the Company (as defined in Section 4.2 below) during the term of this Agreement from the Effective Date (as defined below) and for a period of one (1) year from the date my status as an employee is terminated in any geographic area in which the Company does business.

4.2     Direct and Indirect Competition. I agree that the phrase "directly or indirectly compete" shall include owning, managing, operating, or controlling, or participating in the ownership, management, operation, or control of, or being connected with or having any interest in, as a stockholder, director, officer, employee, agent, consultant, assistant, advisor, sole proprietor, partner, or otherwise, any business which is the same as or a direct market competitor of any business that is conducted by the Company or any of the Company's subsidiaries at the time my employment with the Company is terminated; *provided*, *however*, that this prohibition shall not apply to my ownership of less than four percent (4.00%) of the voting stock in companies whose stock is traded on a national securities exchange or in the over-the-counter market.

4.3     Enforceability. I acknowledge that the non-competition provisions are reasonable and necessary for the protection of the Company's business and proprietary information. I also acknowledge that the non-competition provisions are necessary to protect the goodwill of the Company. In addition, I acknowledge that the services rendered by me during my employment with the Company have been unique, special, and extraordinary. I also acknowledge that such provisions will not unduly restrict my ability to earn a livelihood. If any of the provisions of this Section 4 are held to be unenforceable, the remaining provisions shall nevertheless remain enforceable, and the court making such determination

SLC_5685713.1

shall modify, among other things, the scope, duration, or geographic area of this Section to preserve the enforceability hereof to the maximum extent then permitted by law.

5. <u>INVENTIONS</u>

5.1 <u>Disclosure of Inventions</u>. If I conceive, learn, make, or first reduce to practice, either alone or jointly with others, any Employment Inventions (defined in Section 5.4 below) while I am employed by the Company, I will promptly disclose such Employment Inventions to the Company or to any person designated by it. All such Employment Inventions which the Company determines to be related to or useful in the Company's business or in the research and development of the Company's business shall be the sole and exclusive property of the Company.

5.2 <u>Assignment, Assistance, and Power of Attorney</u>. The Company shall have the right to use and to apply for patents, copyrights, or other statutory or common law protections in any country for the Employment Inventions included in Section 5.1. I hereby assign to the Company any rights which I have acquired or which I may acquire in such Employment Inventions. Furthermore, I will assist the Company in every proper way at the Company's expense to obtain patents, copyrights, and other statutory or common law protections for such Employment Inventions in any country and to enforce such rights from time to time. Specifically, I will execute all documents as the Company may use in applying for and in obtaining or enforcing such patents, copyrights, and other statutory or common law protections, together with any assignments thereof to the Company or to any person designated by the Company. My obligations under this Section shall continue beyond the termination of my employment with the Company, but the Company shall compensate me at a reasonable rate after such termination for the time which I actually spend at the Company's request in rendering such assistance.

5.3 <u>Exclusion of Prior Inventions</u>. I have identified on *Exhibit A* attached hereto a complete list of all inventions which I have conceived, learned, made or first reduced to practice, either alone or jointly with others, prior to my employment with the Company and which I desire to exclude from the operation of this Agreement. If no inventions are listed on this *Exhibit A*, I represent that I have made no such inventions at the time of signing this Agreement.

5.4 <u>Employment Inventions</u>. The definition of Employment Invention as used in this Section 3 is the definition found in Section 2 of the Utah Employment Inventions Act (U.C.A. 34-39-2) as follows:

"Employment invention" means any invention or part thereof conceived, developed, reduced to practice, or created by an employee which is:

(a) conceived, developed, reduced to practice, or created by the employee:

(i) within the scope of his employment;

(ii) on his employer's time; or

(iii) with the aid, assistance, or use of any of his employer's property, equipment, facilities, supplies, resources, or intellectual property;

(b) the result of any work, services, or duties performed by an employee for his employer;

SLC_5685713.1

(c)        related to the industry or trade of the employer; or

(d)        related to the current or demonstrably anticipated business, research, or development of the employer.

To the extent applicable, such "employment invention" shall be deemed a "work made for hire."

5.5        License for Other Inventions.  If, in the course of my employment with the Company, I incorporate into Company property an invention owned by me or in which I have an interest, the Company is granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, modify, use and sell such invention as part of and in connection with the Company property.

6.        CONFLICTS

6.1        Prior Agreements.  I represent that, to the best of my knowledge, my performance of all the terms of this Agreement and my work as an employee of the Company does not breach any oral or written agreement which I have made to keep in confidence proprietary information acquired by me prior to my employment with the Company.

6.2        Materials of Prior Employers.  I represent that I have not used nor will I use in the performance of my duties for the Company any materials or documents of a former employer of mine which are not generally available to the public, unless I have first obtained written authorization from the former employer for their possession and use and have delivered a copy of such written authorization to the Company before my use of such materials or documents in connection with the performance of my duties for the Company.

6.3        Other Agreements and Activities.  While I am employed by the Company, I will not enter into any oral or written agreement which conflicts with my obligations under this Agreement or with the performance of my work as an employee of the Company.  I further agree to notify the Company in writing of any employment, consulting or similar service agreements between myself and any party other than the Company during my employment with the Company.

6.4        Intentionally Deleted.

6.5        Non-Solicitation Upon Termination of Employment.  For one (1) year following the termination of my employment with the Company for any reason, I will not directly or indirectly solicit or attempt to solicit the business of any of the customers or clients of the Company who became known to me while I was employed by the Company either for myself or for any other person or entity, if such solicitation is competitive with the business of the Company.  Moreover, for one (1) year following the termination of my employment with the Company, I will not directly or indirectly solicit or attempt to solicit the services of any employees of the Company, either for myself or for any other entity, nor will I, directly or indirectly, hire any employees of the Company.

6.6        Non-Disparagement.  I hereby agree not to make any disparaging statements, either written or verbal, to any third party, including any member of the media, regarding the Company, its services, practices, or employees; *provided* that the obligations of non-disparagement that are set forth

SLC_5685713.1

in this Section 6.6 shall in no way: (1) limit my ability to make a claim to enforce my rights hereunder or (2) prevent me from truthfully responding to any subpoena, court order, or request from an administrative agency.

7.    <u>MISCELLANEOUS</u>

7.1    <u>No Obligation to Employ</u>.  This Agreement does not constitute a contract of employment nor does it create an implied obligation of the Company to employ me for any certain period of time.  I acknowledge that I am an at-will employee and that I can leave the Company at any time and the Company can terminate my employment at any time for any reason.

7.2    <u>Injunctive Relief</u>.  I understand that disclosure of any Confidential Information or breach or threatened breach of any of the covenants or other agreements contained herein would give rise to irreparable injury to the Company, which injury would be inadequately compensable in money damages.  Accordingly, the Company may seek and obtain injunctive relief from the breach or threatened breach of any provision, requirement, or covenant of this Agreement, in addition to and not in limitation of any other legal remedies that may be available.

7.3    <u>Warranty of No Conflict or Violation</u>. I warrant and represent that I have not entered into any agreements, written or oral, with any third party that would restrict or impair my ability to fulfill the duties under this Agreement and that I have taken no confidential or proprietary information or trade secrets from any third party and that I will not use any such confidential or proprietary information or trade secrets of any third party in the performance of my duties for the Company.

7.4    <u>Successors and Assigns</u>.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.  Because I am providing personal services, I understand that I have no right to assign this Agreement; however, the Company shall have the right to assign this Agreement to any of the Company's successors, assigns, or affiliates or to any entity that, directly or indirectly, is in control of, is controlled by, or is under common control with the Company.  If the Company assigns such rights or obligations, then I agree to privity of contract between myself and the assignee.

7.5    <u>Survival</u>.  The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.

7.6    <u>Severability</u>.  If any paragraph, sentence, term or provision of this Agreement or the application of this Agreement is found by a court of competent jurisdiction to be invalid or unenforceable, that determination shall not affect, impair or invalidate the remainder of this Agreement.  Each paragraph, sentence, term and provision not directly designated to be invalid or unenforceable shall be valid and enforceable to the fullest extent permitted by law.

7.7    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Company and me with respect to the subject matters covered by it and supersedes all prior oral or written agreements between the Company and me relating to such matters.

7.8     <u>Modifications</u>.  This Agreement may not be modified or amended except by a written agreement that refers to this Agreement and is signed both by the Company and by me.

7.9     <u>Waiver of Breach</u>. The waiver of any breach of any provision of this Agreement or failure to enforce any provision hereof shall not operate or be construed as a waiver of any subsequent breach by any party.

7.10     <u>Governing Law; Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Utah. With respect to any claim or action arising under this Agreement each party to the Agreement hereby (a) irrevocably submits to the exclusive jurisdiction of the Courts of the State of Utah, and (b) irrevocably waives any objection which such party may have at any time to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement brought in any such court, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum and further irrevocably waives the right to object, with respect to such claim, suit, action or proceeding brought in any such court, that such court does not have jurisdiction over such party.

7.11     <u>Advice of Counsel</u>.  I acknowledge that, before executing this agreement, I have been given an opportunity to seek the advice of independent legal counsel, and I have read and understood all of the terms and provisions of this Agreement.

7.12     <u>Copies</u>.  Once signed, both parties agree that any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) shall be considered an original.

**I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS.  I HAVE LISTED ON EXHIBIT A TO THIS AGREEMENT ANY AND ALL PROPRIETARY INFORMATION, IDEAS, PROCESSES, INVENTIONS, TECHNOLOGY, WRITINGS, PROGRAMS, DESIGNS, FORMULAS, DISCOVERIES, PATENTS, COPYRIGHTS, OR TRADEMARKS, OR IMPROVEMENTS, RIGHTS, OR CLAIMS RELATING TO THE FOREGOING, THAT I DESIRE TO EXCLUDE FROM THIS AGREEMENT.**

[*Remainder Intentionally Left Blank; Signature Pages Follow*]

DocuSign Envelope ID: F8F40A99-64DD-4B0D-A625-2966F2DD24F1

IN WITNESS WHEREOF, the parties have caused this Agreement Regarding Confidentiality, Non-Competition, and Assignment of Inventions to be effective as of the Effective Date.

EMPLOYEE                                                    Lumio HX, Inc.

DocuSigned by:                                             DocuSigned by:

_____                           *Greg Butterfield*
6987710CC8F249C...                                        4E3712D9FA7747E...
(Employee's Signature)                                     (Signature of Authorized Representative)

Name:  John Bankhead                                       Name: Greg Butterfield

**EXHIBIT A**

**PRIOR INTELLECTUAL PROPERTY**

**TO:** _____

**FROM:** _____

**DATE:** _____

**SUBJECT:**   **Prior Intellectual Property**

**1.**   Except as listed in Section 2 of this Exhibit (below), the following is a complete list of all inventions or improvements relevant to the subject matter of my employment by Lumio HX, Inc. (the "*Company*") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

☐   No inventions or improvements.

☐   See below:

_____

_____

_____

☐   Additional sheets attached.

**2.**   Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to Prior Intellectual Property generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| Invention or Improvement | Party(ies) | Relationship |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

☐   N/A

☐   Additional sheets attached.

SLC_5685713.1