**<u>Exhibit 5</u>**

**EMPLOYMENT AGREEMENT**

THIS EMPLOYMENT AGREEMENT ("*Agreement*") is made as of the 10th day of December, 2021 (the "*Effective Date*"), by and between Lumio HX, Inc., a Delaware corporation ("*Company*"), and Oscar Luna ("*Employee*").

**RECITALS**

A.      Company and its Affiliates are in the business of providing solar and energy efficiency products and other homer services products to consumers nationwide.  For purposes of this Agreement, the term "*Affiliate*" means any entity currently existing or subsequently organized or formed that directly or indirectly controls, is controlled by or is under common control with Company, whether through the ownership of voting securities, by contract, or otherwise.

B.      It is the desire of Company to assure itself of the services of Employee by engaging Employee to perform services under the terms hereof.

C.      Employee desires to provide services to Company on the terms herein provided.

**AGREEMENT**

NOW, THEREFORE, in consideration of the foregoing and of the respective covenants and agreements set forth below, the parties hereto agree as follows:

1.      **Employment**.  Company hereby employs Employee, and Employee agrees to be employed as the Company's Senior Vice President of Sales. Employee will report to the Company's Chief Revenue Officer ("*CRO*"). Employee's operations shall stem from the Company's offices in Dallas, Texas. Employee shall devote his full time and attention to achieving the purposes of Company and discharging his responsibilities to Company.  Employee shall comply with all material rules, policies, and procedures of Company as are now in effect or that may be effective in the future. Employee shall perform all of his responsibilities in compliance with all applicable laws.

2.      **At-Will Employment**.  Employee's employment with Company shall be at-will and shall be for no specific term, and either Employee or Company may terminate the employment relationship, with or without cause, subject to the provisions of Section 5 below.

3.      **Compensation**.  For the duration of Employee's employment hereunder, Employee shall be entitled to compensation that shall be computed and paid pursuant to the following subparagraphs.

3.1      **Salary**.  Effective as of the Effective Date, Employee shall be paid a salary at an annual gross rate of Two Hundred Fifty Thousand Dollars ($250,000) per year.  The actual amount paid to Employee shall be prorated for the actual period of employment and payable in equal installments in accordance with Company's normal payroll practices, subject to appropriate deductions and withholding. The Company may, at its discretion, review Employee's salary from time to time to determine whether a change in salary shall be made; provided, however that the decision of whether to adjust salary is in the sole discretion of the Company. In addition to the annual salary set forth above, Employee shall be entitled to participate in any bonus programs adopted by the Company from time to time which are applicable to and include Employee and for which Employee qualifies.

SLC_5685724.1

**3.2**     **Equity Vesting.** All shares ("*Shares*") of common stock ("*Common Stock*") held by Employee as of the Effective date shall vest in accordance with the terms of that certain Stock Restriction Agreement entered into by and between the Company and Employee (the "*Stock Restriction Agreement*"). In the event Employee shall receive additional shares of Common Stock after the Effective Date, such shares shall vest in accordance with any provisions set forth in the grant documents related thereto.

(a)     In the event that (i) Employee's continuous status as an employee of the Company is terminated by the Company without Cause (as defined below) within twelve (12) months of the closing (the "*Closing*") of that certain transaction contemplated by the Asset Purchase Agreement by and between the Company and Zenith Security, LLC, Zenith Solar, LLC, and DECA Living, LLC dated December 10, 2021 (the "*Asset Purchase Agreement*"), or (ii) Employee terminates his or her continuous status as an employee of the Company for Good Reason (as defined below) within twelve (12) months of the Closing, in either case other than as a result of death or Total Disability, 100% of the total number of Shares that are unvested shares pursuant to the Stock Restriction Agreement shall  be automatically and immediately deemed vested shares, but provided that such acceleration of vesting shall be conditioned upon Employee executing and not revoking a release of claims in a form reasonably satisfactory to the Company.

(b)     In the event that (i) Employee's continuous status as an employee of the Company is terminated by the Company with Cause (as defined below), or (ii) Employee terminates his or her continuous status as an employee of the Company without Good Reason (as defined below) within twelve (12) months of the Closing, 100% of the total number of Shares held by Employee, whether such shares be vested shares or unvested shares pursuant to the Stock Restriction Agreement, shall be automatically and immediately cancelled and forfeited by Employee. Additionally, at any time, in the event Employee shall breach the provisions of (a) Sections 4, 6.5, or 6.6 that certain Agreement Regarding Confidentiality, Non Competition, and Assignment of Inventions by and between the Company and Employee dated as of the Effective Date (the "C*onfidentiality Agreement*"), or (b) Section 7.7 of the Asset Purchase Agreement, whether or not Employee shall be employed by the Company at the time of such breach, then, in such event, Employee expressly acknowledges and agrees that upon such breach 100% of the total number of Shares held by Employee, whether such shares be vested shares or unvested shares pursuant to the Stock Restriction Agreement, shall be automatically and immediately be deemed unvested shares and thereafter cancelled and forfeited by Employee.

**3.3**     **Withholding.**  Company shall be entitled to withhold from any amounts payable under this Agreement any federal, state, local and foreign withholding, and other taxes and charges that Company is required to withhold. Company shall be entitled to rely on an opinion of counsel if any questions as to the amount or requirement of withholding shall arise.

**4.**     **Other Benefits**.

**4.1**     **Certain Benefits**.  Employee shall be eligible to participate in employee benefit plans established by Company on a basis commensurate with Employee's position and in accordance with Company's policies from time to time, provided that Employee meets all eligibility requirements of any such plan. Nothing herein shall require the adoption or maintenance of any such plan.

**4.2**     **Expenses**.  Company shall reimburse Employee in accordance with Company's policies and procedures for reasonable business expenses necessarily incurred in the performance of duties hereunder provided that Employee provides appropriate receipts and vouchers and other

reasonable documentation indicating the specific business purpose for each such expenditure in accordance with Company policies.

**4.3    Vacation**.    Employee shall be entitled to vacation and other time off commensurate with then current Company policy.

**5.    Termination**.

**5.1    General**.  Upon a termination for any reason and subject to Sections 5.2 and 5.3 below, the obligations of Company to pay or provide Employee with compensation and benefits under Sections 3.1 and 4.1 shall cease, and Company shall have no further obligations to provide compensation or benefits to Employee hereunder other than payment of compensation earned prior to the date of termination.

**5.2    For Cause**.  Company shall have the right to immediately terminate Employee's employment with the Company and this Agreement for Cause upon providing Employee written notice of such termination.  "*Cause*" as used herein shall mean a good faith determination by the Board, in its sole discretion, that any of the following has occurred: (i) willful and repeated failure by Employee to perform his or her duties hereunder which is not remedied within ten (10) days after written notice from Company, (ii) Employee has engaged in unethical conduct or conduct constituting disloyalty to the Company, dishonesty, fraud, misappropriation, theft, embezzlement, or moral turpitude, whether or not involving the Company, or any other such actions which materially and negatively affect the reputation and goodwill of the Company; (iii) Employee has willfully or repeatedly failed to carry out the reasonable directions of the CRO, the Company's Chief Executive Officer, or the Company's board of directors ("Board") which is not remedied within ten (10) days after written notice from Company; (iv) Employee has engaged in conduct in violation of the material rules, policies, and procedures of Company or other misconduct or gross negligence in connection with the performance of his or her duties; (v) the Employee's commission of, conviction of, or plea of nolo contendere or confession to, any felony or other crime involving either fraud, breach of Employee's duty of loyalty with respect to Company, or other acts of moral turpitude; and (vi) Employee has materially breached the terms of (a) this Agreement, (b) Sections 4, 6.5, or 6.6 of the Confidentiality Agreement, (c) Section 7.7 of the Asset Purchase Agreement, (d) the Company's Stockholders Agreement, or (d) the Company's bylaws, and failed to cure said breach (if curable) within ten (10) days' written notice thereof by Company. Notwithstanding the foregoing, any determination of Cause relative to Employee shall require the approval of the Board. Upon termination of Employee's employment hereunder for Cause, all compensation described herein shall cease as of the termination date, and Employee shall have no rights to any other compensation or payments other than payment of compensation earned prior to the date of termination.

**5.3    Without Cause or For Good Reason.**

(a)    If Company terminates Employee's employment without Cause, or Employee resigns his employment with Good Reason (as defined below), subject to Section 5.3(b), Company shall (i) continue to pay Employee's base salary (at the annual rate then in effect), subject to applicable deductions and withholdings and in accordance with Company's normal payroll periods, for a period of six (6) months following the date of termination ("Severance Period"); (ii) pay any bonus that was earned but not yet paid prior to the date of termination and (iii) continue to provide health benefit coverage during the Severance Period (or until Employee becomes eligible for comparable coverage under the medical health plans of a successor employer, if earlier) for Employee and any eligible dependents under all Company

health and welfare plans in which Employee and any such dependents participated immediately prior to the date of termination to the extent permitted thereunder (and to the extent that such benefits may be provided under applicable law without penalty); provided, that, such coverage shall not be provided in the event Company would be subject to any excise tax under Section 4980D of the Code or other penalty or liability pursuant to the provisions of the Patient Protection and Affordable Care Act of 2010 (as amended from time to time), and in lieu of providing the coverage described above, Company shall instead pay to Employee a fully taxable monthly cash payment in an amount such that, after payment by Employee of all taxes on such payment, Employee retains an amount equal to the applicable premiums for such month, with such monthly payment being made on the first day of each month for the remainder of the Severance Period.  For the avoidance of doubt, Employee's health benefit coverage from Company during the Severance Period shall run concurrent with the health continuation coverage period mandated by Section 4980B of the Code.

(b)    Notwithstanding the foregoing, (i) the amounts payable to Employee under Section 5.3(a) shall be contingent upon and subject to Employee's execution and non-revocation of a general waiver and release of claims agreement in the form attached hereto as Exhibit A (the "Release") and the expiration of any applicable revocation period (the date on which the Release becomes effective and non-revocable, the "Release Effective Date") occurring on or prior to the sixtieth (60th) calendar day following the date of termination; and (ii) the installment payments pursuant to Section 5.3(a) shall commence on the first payroll period following the Release Effective Date, and the initial installment shall include a lump-sum payment of all amounts accrued under Section 5.3(a) from the date of termination through the date of such initial payment; provided, however, that if the sixty (60) day period during which the Release Effective Date may occur spans two calendar years, then payment of the initial installment shall not be made until the first business day of the second calendar year (with such first installment to include a lump-sum payment of all amounts accrued under Section 5.3(a) from the date of termination through the date of such initial payment).

(c)    Employee shall not be required to mitigate the amount of any payment or benefit contemplated by this Section 5.3, nor shall any such payment or benefit be reduced by any earnings or benefits that Employee may receive from any other source.  Except as provided in this Section 5.3, upon termination by Company without Cause, or upon resignation by Employee for Good Reason, Employee shall not be entitled to any further compensation, payments or severance.

(d)    "Good Reason" shall mean, without Employee's consent:  (a) a material breach by Company of this Agreement; (b) a change by Company of Employee's reporting structure in the Company such that Employee is no longer reporting directly to the CRO; or (c) a substantial reduction in Employee's compensation; provided, however, that for the purposes of determining whether there has been a reduction of Employee's compensation, the following shall not be considered:  (x) the award or failure to award any discretionary bonuses, (y) any changes that are equally applicable to all eligible employees under Company benefit plans, and (z) any reductions in compensation made by Company ratably with other employees at similar levels of responsibility; provided, however, that none of the events described in the foregoing clauses shall constitute Good Reason unless Employee has notified Company in writing describing the events that constitute Good Reason within fifteen (15) calendar days following the first occurrence of such events and then only if Company fails to cure such events within fifteen (15) calendar days after Company's receipt of such written notice, and Employee shall have terminated Employee's employment with Company promptly following the expiration of such cure period. Any resignation by Employee that is not for Good Reason shall be deemed to be without Good Reason. Any

SLC_5685724.1

termination by Company that is not for Cause, or due to death or Total Disability, shall be deemed to be without Cause.

**5.4**    **Death or Total Disability**.    This Agreement and Employee's employment hereunder shall terminate automatically upon the death or Total Disability of Employee.  The term "Total Disability" as used herein shall mean Employee's inability (with or without such accommodation as may be required by law protecting persons with disabilities and that places no undue burden on Company) as determined in good faith by the Board, to perform his duties hereunder for a period or periods aggregating ninety (90) calendar days in any twelve (12) month period as a result of physical or mental illness, unless Employee is granted a leave of absence by the Board.  If Employee's employment is terminated as a result of Employee's death or Total Disability, this Agreement shall terminate without any obligations of Company to Employee, other than for payment of compensation earned prior to the termination date.

**5.5**    **Without Good Reason**.  Employee may terminate his employment with Company without Good Reason upon ninety (90) days' advance written notice to Company. Upon a termination by Employee without Good Reason, Employee shall have no rights to any other compensation or payments other than payment of compensation earned prior to the date of termination.

**5.6**    **Termination of All Positions**.  Upon termination of Employee's employment for any reason, and regardless of whether Employee continues as a consultant to Company, Employee agrees to resign, as of the date of termination or such other date requested by Company, from all positions and offices that Employee then holds with Company and its subsidiaries and Affiliates. Employee agrees to promptly execute such documents as Company, in its sole discretion, shall reasonably deem necessary to effect such resignations, and in the event that Employee is unable or unwilling to execute any such document, Employee hereby grants his proxy to any officer of Company to so execute on his behalf.

**6.**    **Return of Company Property**.  Employee acknowledges that all memoranda, notes, documents, drawings, specifications, software, media and other materials containing any confidential or proprietary information of the Company or its Affiliates are the exclusive property of Company and/or its Affiliates, including any copies thereof, and Employee will deliver to Company all such material in Employee's possession or control upon Company's request and in any event upon the termination of Employee's employment with Company.  Employee will also return any keys, equipment, identification or credit cards, or other property belonging to Company or its Affiliates upon termination or request. Employee further agrees that if Company advances or loans Employee any money during the course of his employment, upon termination Employee shall immediately repay Company in full or alternatively execute a promissory note for the balance, providing for the remaining payment due within sixty (60) days of Employee's termination of employment with Company.  Nothing in this provision shall preclude Company from requiring the execution of a promissory note at the time of any advance or loan, and Employee acknowledges that the terms of any such promissory note may require Employee to repay any outstanding amounts thereunder prior to Company's or an Affiliate's first filing of a registration statement on Form S-1 (or any similar form) with the Securities and Exchange Commission in connection with Company's or an Affiliate's initial public offering, which, for the avoidance of doubt, is not guaranteed to occur.

**7.**    **Disclosure**.  Employee agrees fully and completely to reveal the terms of Exhibit B attached hereto to any future employer or potential employer of Employee and authorizes Company, at its election, to make such disclosure.

**8.**      **Representation of Employee**.   Employee represents and warrants to Company that Employee is free to enter into this Agreement and that Employee has no commitment, arrangement or understanding to or with any party that restrains or is in conflict with Employee's performance of the covenants, services and duties provided for in this Agreement.  Employee agrees to indemnify Company and to hold Company harmless against any and all liabilities or claims arising out of any unauthorized act or acts by Employee that, the foregoing representation and warranty to the contrary notwithstanding, violate or breach any such commitment, arrangement or understanding.

**9.**      **Conditions of Employment**.  Company's obligations to Employee under this Agreement are conditioned upon Employee's execution and delivery of the Confidentiality Agreement, the form of which is attached hereto as Exhibit B, the terms and provisions of which form a material part of this Agreement and which are hereby incorporated herein by this reference.

**10.**      **Assignability**.  This Agreement shall constitute a legal, valid and binding obligation of Employee in accordance with its terms, and shall inure to the benefit of Company, its successors and assigns. During Employee's employment hereunder, this Agreement may not be assigned by either party without the written consent of the other; provided, however, that Company may in its sole discretion assign its rights and obligations under this Agreement, without Employee's consent to a successor by sale, merger or liquidation.

**11.**      **Notices**.   Any notice required or permitted by this Agreement shall be in writing and delivered in person, sent by documented overnight delivery service, or mailed by certified or registered mail, postage prepaid, to the appropriate party or parties at the addresses referenced below, or to such other address as the parties may hereafter designate to the other in writing.  Unless otherwise specified in this Agreement, all such notices and other written communications shall be effective (and considered received for the purposes of this Agreement) (a) if delivered, upon delivery, (b) if sent by documented overnight delivery service, on the date delivered, or (c) if mailed, three (3) days after mailing.  Notices shall be sent to Employee, at: [_____] or if to Company, addressed to the attention of the Chief Executive Officer and separately the General Counsel, at the Company's the current headquarters.

**12.**      **Severability**.  In the event that any provision of this Agreement or compliance by any of the parties with any provision of this Agreement shall constitute a violation of any law, or be deemed unenforceable or void, then such provision, to the extent only that it is in violation of law, or is deemed void or unenforceable, shall be deemed modified to the extent necessary so that it is no longer unenforceable, void or in violation of law and shall be enforced to the fullest extent permitted by law.  If such modification is not possible, said provision, to the extent that it is in violation of law, void or unenforceable, shall be deemed severable from the remaining provisions of this Agreement, which provisions shall remain binding on the parties.

**13.**      **Entire Agreement; Amendment**.  This Agreement (including Exhibit B) contains the entire agreement of the parties, and supersede any prior or contemporaneous statements or understandings by or between the parties. Employee's rights, including his ownership of equity and equity like interests in Company, shall not be affected in any way by any of the provisions of this Agreement.  This Agreement may be changed only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought, and any such modification on behalf of Company must be approved by the Board.

SLC_5685724.1

**14.** **Governing Law; Jurisdiction; Waiver of Jury Trial**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Utah excluding choice of law provisions. The parties hereby irrevocably and unconditionally agree to submit any legal action or proceeding relating to this Agreement to the non-exclusive general jurisdiction of the courts of the State of Utah located in Salt Lake County and the courts of the United States located in Utah and, in any such action or proceeding, consent to jurisdiction in such courts and waive any objection to the venue in any such court.  The Parties agree that service of process upon each other in any such action or proceeding may be made by United States mail, certified or registered, return receipt requested, postage prepaid.  Unless otherwise agreed, the prevailing party in any litigation relating to the interpretation or enforcement of this Agreement shall be entitled to reasonable costs and attorneys' fees. EACH PARTY HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR OTHER PROCEEDING INSTITUTED BY OR AGAINST SUCH PARTY IN RESPECT OF ITS RIGHTS OR OBLIGATIONS HEREUNDER.

**15.** **Third-Party Beneficiaries**.  Affiliates of Company are and shall be third-party beneficiaries of this Agreement.

**16.** **Survival**.  Sections 3.2, 5 through 9, 14, and 20 survive any termination of this Agreement or Employee's employment relationship with Company.

**17.** **Nonwaiver**.  Failure of Company to insist upon strict adherence to any provision of this Agreement or to enforce any provision, on one or more occasions, shall not be deemed to be a waiver of its right to enforce any provision in the future.

**18.** **Counterparts**.  This Agreement may be executed in counterparts (including by facsimile transmission or electronic image scan (PDF)), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**19.** **Employee's Recognition of Agreement**.  Employee acknowledges that Employee has read and understood this Agreement and agrees that its terms are necessary for the reasonable and proper protection of Company's business. Employee acknowledges that Employee has been advised by Company that Employee is entitled to have this Agreement reviewed by an attorney of Employee's selection, at Employee's expense, prior to signing, and that Employee has either done so or elected to forgo that right.

**20.** **Section 409A of the Code**.

**20.1** **General**.  The parties hereto acknowledge and agree that, to the extent applicable, this Agreement shall be interpreted in accordance with, and incorporate the terms and conditions required by, Section 409A of the Code and the Department of Treasury Regulations and other interpretive guidance issued thereunder, including without limitation any such regulations or other guidance that may be issued after the Effective Date ("*Section 409A*").  Notwithstanding any provision of this Agreement to the contrary, in the event that Company determines that any amounts payable hereunder will be taxable currently to Employee under Section 409A(a)(1)(A) of the Code and related Department of Treasury guidance, Company and Employee shall cooperate in good faith to (i) adopt such amendments to this Agreement and appropriate policies and procedures, including amendments and policies with retroactive effect, that they mutually determine to be necessary or appropriate to preserve the intended tax treatment of the benefits provided by this Agreement, to preserve the economic benefits of this Agreement, and to avoid less-favorable accounting or tax consequences for Company, and/or (ii) take such other actions as mutually determined to be necessary or appropriate to exempt the amounts payable hereunder from Section 409A or to comply with the requirements of Section 409A and thereby

avoid the application of penalty taxes thereunder; provided, however, that this Section 20.1 does not create an obligation on the part of Company to modify this Agreement and does not guarantee that the amounts payable hereunder will not be subject to interest or penalties under Section 409A, and in no event whatsoever shall Company or any of its Affiliates be liable for any additional tax, interest or penalties that may be imposed on Employee as a result of Section 409A or any damages for failing to comply with Section 409A.

**20.2    Special Rules**.  Notwithstanding any provision to the contrary in this Agreement: (i) no amount shall be payable pursuant to Section 5.3 unless the termination of the Employee's employment constitutes a "separation from service" within the meaning of Section 1.409A-1(h) of the Department of Treasury Regulations; (ii) if Employee is deemed at the time of his separation from service to be a "specified employee" for purposes of Section 409A(a)(2)(B)(i) of the Code, to the extent that delayed commencement of any portion of the termination benefits to which Employee is entitled under this Agreement (after taking into account all exclusions applicable to such termination benefits under Section 409A), including, without limitation, any portion of the additional compensation awarded pursuant to Section 5.3, is required in order to avoid a prohibited distribution under Section 409A(a)(2)(B)(i) of the Code, such portion of Employee's termination benefits shall not be provided to Employee prior to the earlier of (A) the expiration of the six-month period measured from the date of Employee's "separation from service" with Company (as such term is defined in the Department of Treasury Regulations issued under Section 409A) and (B) the date of Employee's death; provided that upon the earlier of such dates, all payments deferred pursuant to this Section 20.2 shall be paid to Employee in a lump sum, and any remaining payments due under this Agreement shall be paid as otherwise provided herein; (iii) the determination of whether Employee is a "specified employee" for purposes of Section 409A(a)(2)(B)(i) of the Code as of the time of his separation from service shall be made by Company in accordance with the terms of Section 409A and applicable guidance thereunder (including, without limitation, Section 1.409A-1(i) of the Department of Treasury Regulations and any successor provision thereto); (iv) for purposes of Section 409A, Employee's right to receive installment payments pursuant to Section 5.3 shall be treated as a right to receive a series of separate and distinct payments; and (v) to the extent that any reimbursement of expenses or in-kind benefits constitutes "deferred compensation" under Section 409A, (A) such reimbursement or benefit shall be provided no later than December 31 of the year following the year in which the expense was incurred, (B) the amount of expenses reimbursed in one year shall not affect the amount eligible for reimbursement in any subsequent year, (C) the amount of any in-kind benefits provided in one year shall not affect the amount of in-kind benefits provided in any other year and (D) the right to any benefits or reimbursements or in-kind benefits may not be liquidated or exchanged for any other benefit. Neither Employee nor any of Employee's creditors or beneficiaries shall have the right to subject any "deferred compensation" under Section 409A payable under this Agreement to any anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, attachment or garnishment.  Except as permitted under Section 409A, any "deferred compensation" under Section 409A payable to Employee or for Employee's benefit may not be reduced by, or offset against, any amount owing by Employee to Company or any of its affiliates.

[*Remainder Intentionally Left Blank; Signature Pages Follow*]

**EMPLOYEE**

DocuSigned by:

*Oscar Luna*

495B7C565DEC4A4...

Oscar Luna

**COMPANY**

Lumio HX, Inc.

DocuSigned by:

*Greg Butterfield*

4E3712D9FA7747E...

By: Greg Butterfield

Its: CEO