**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re: LUMIO HOLDINGS, INC., et al., Debtors.          Chapter 11  Case No. 24-11916 (JKS)

JEFFREY T. VARSALONE, as LIQUIDATING TRUSTEE of the LUMIO LIQUIDATING
TRUST,  Plaintiff,

v.                                                                      Adv. Pro. No. 25-52130 (JKS)

DECA LIVING, LLC; ZENITH SECURITY, LLC; ZENITH SOLAR, LLC; JOHN
BANKHEAD; OSCAR LUNA; and CODI NUKAYA,  Defendants.

**DEFENDANT JOHN BANKHEAD'S MOTION FOR LEAVE TO AMEND ANSWER TO
ASSERT RECOUPMENT AND SETOFF**

Defendant John Bankhead ("Bankhead"), proceeding pro se, respectfully moves this Court
pursuant to Federal Rule of Civil Procedure 15(a)(2), made applicable by Federal Rule of
Bankruptcy Procedure 7015, for leave to file an Amended Answer asserting recoupment and
setoff defenses against Plaintiff Jeffrey T. Varsalone, solely in his capacity as Liquidating Trustee
of the Lumio Liquidating Trust (the "Trustee"). In support, Bankhead states:

**BACKGROUND**

1.  On August 27, 2025, the Trustee filed this adversary proceeding against Bankhead and others
asserting claims for breach of contract, conversion, unjust enrichment, and breach of fiduciary
duty, seeking approximately $4,866,943 collectively from all defendants.

2.  On September 24, 2025, Bankhead timely filed his Answer and Affirmative Defenses. The
Answer expressly reserved the right to assert recoupment and setoff: "Mr. Bankhead expressly
reserves, and does not waive, his rights to pursue obligations owed to him personally, including
(i) earnout compensation; (ii) reimbursement of funds advanced; and (iii) promised equity/
shares. These are preserved as potential offsets or counterclaims and are not extinguished by this
action."

3.  On March 6, 2026, the Trustee served its First Request for Production of Documents (26
requests), First Set of Interrogatories (11 questions), and Notice of Deposition simultaneously —
the first discovery served in this case.

4.  This Court's docket reflects no scheduling order, pretrial order, or case management order
setting a deadline for amended pleadings. This motion is timely under Rule 15's liberal
amendment standard.

**ARGUMENT**

**I.  LEAVE TO AMEND SHOULD BE FREELY GRANTED.**

5. Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave when justice so requires." Leave should be granted absent undue delay, bad faith, dilatory motive, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962).

6. None of those limiting factors exist here. This case is at the very outset of formal discovery. No depositions have been taken, no experts disclosed, no scheduling deadlines missed, and no trial date set. The Trustee served its first discovery requests just days ago.

7. Bankhead's recoupment and setoff arise from the same Asset Purchase Agreement, Employment Agreements, and course of dealing that form the entire basis of the Trustee's Complaint. Resolving all claims arising from the same transaction in a single proceeding promotes judicial efficiency.

8. The Trustee will suffer no prejudice. Bankhead expressly reserved these defenses in his original Answer filed September 24, 2025. All underlying facts and documents are within the Trustee's possession and control as administrator of the Lumio estate.

## II. RECOUPMENT ARISING FROM THE SAME TRANSACTION IS NOT SUBJECT TO BANKRUPTCY LIMITATIONS.

9. Recoupment in bankruptcy allows a defendant to reduce a plaintiff's recovery by asserting claims arising from the exact same transaction, without being subject to the automatic stay or other bankruptcy limitations applicable to independent setoff claims. All of Bankhead's recoupment amounts arise directly from the same APA and Employment Agreements that the Trustee is suing under. They are the same transaction.

10. The Trustee's Complaint states in paragraphs 85, 111, and 116 that "Lumio performed all of their obligations under the APA." That statement is demonstrably false and is directly contradicted by Lumio's own internal financial records, including a reconciliation prepared by Lumio's own Financial Controller confirming $3,200,000 owed to DECA as of February 28, 2022, and the APA's own payment provisions showing $4,376,163.60 in post-closing payments and $4,000,000 in earnout payments that were never made. This Court should not permit the Trustee to selectively enforce the APA while ignoring Lumio's own material breaches of the same agreement.

## CONCLUSION

For the foregoing reasons, Bankhead respectfully requests that the Court grant him leave to file the Amended Answer attached hereto as Exhibit A, and grant such other and further relief as the Court deems just and proper.

Dated: _____March 27_____, 2026

Respectfully submitted,

_____

John Bankhead (Pro Se)

4326 Cobalt Bloom Ct
Arlington, TX 76005

RECEIVED
2026 APR -1  A 9:47
CLERK
BANKRUPTCY COURT

_____

_____

**CERTIFICATE OF SERVICE**

_____

_____

I hereby certify that on ___March 27___, 2026, I served a true and correct copy of the foregoing by U.S. Certified Mail, postage prepaid, upon:

Clerk of the Court
United States Bankruptcy Court
824 N. Market Street, 3rd Floor
Wilmington, DE 19801

Robert J. Dehney / Matthew O. Talmo / Brenna A. Dolphin
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
Wilmington, DE 19801

Joseph A. Piesco / Edward Rooker
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

_____
John Bankhead

**IN THE UNITED STATES BANKRUPTCY COURT**    Exhibit A
**FOR THE DISTRICT OF DELAWARE**

In re: LUMIO HOLDINGS, INC., et al., Debtors.    Chapter 11 | Case No. 24-11916 (JKS)

---

JEFFREY T. VARSALONE, as LIQUIDATING TRUSTEE of the LUMIO LIQUIDATING
TRUST, Plaintiff,

v.    Adv. Pro. No. 25-52130 (JKS)

DECA LIVING, LLC; ZENITH SECURITY, LLC; ZENITH SOLAR, LLC; JOHN
BANKHEAD; OSCAR LUNA; and CODI NUKAYA, Defendants.

---

**AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND NOTICE OF RECOUPMENT
AND SETOFF OF DEFENDANT JOHN BANKHEAD (PRO SE)**
*(EXHIBIT A TO MOTION FOR LEAVE TO AMEND)*

Defendant John Bankhead ("Bankhead"), proceeding pro se, submits this Amended Answer,
Affirmative Defenses, and Notice of Recoupment and Setoff in response to the Complaint filed
by Jeffrey T. Varsalone, solely in his capacity as Liquidating Trustee of the Lumio Liquidating
Trust (the "Trustee"), and states:

---

**PART ONE: ANSWER**

---

**I. GENERAL DENIAL**

Bankhead denies each and every allegation in the Complaint not expressly admitted herein.
Bankhead specifically denies that he personally retained Lumio receivables, exercised dominion
or control over Lumio funds, authorized or directed commission or vendor payments, or
breached any fiduciary duty to Lumio.

**II. SPECIFIC RESPONSES**

**Nature of the Case (¶¶ 1-5):**
Denied as to all characterizations. Bankhead acted in good faith throughout his relationship with
Lumio. Lumio's failure to honor over $6.5 million in documented contractual obligations to
Bankhead personally is the broader context the Trustee omits entirely from the Complaint.

**The APA (¶¶ 21-26):**

Bankhead admits that an Asset Purchase Agreement closed December 10, 2021, and that approximately $39.4 million was paid at closing. Bankhead DENIES that Lumio performed all of its APA obligations. The APA required Lumio to pay $4,376,163.60 in post-closing installments and $4,000,000 in quarterly earnout payments. Lumio paid neither. Lumio also failed to deliver 2,666,666 shares of common stock and 500,000 ISO options confirmed in writing by Lumio's own Legal Operations Manager. Lumio never delivered an Officer's Certificate as required by APA Section 6.6 before withholding any payment or asserting any claim.

**Employment (¶¶ 27-35):**
Bankhead admits he served as Senior Vice President of Sales, reporting to the Chief Revenue Officer, at a base salary of $250,000 per year. Bankhead DENIES that he had independent authority to approve, authorize, or issue corporate payments, commissions, or vendor disbursements. As SVP Sales, Bankhead had no corporate financial authority. His employment terminated on or about August 14, 2024. No written notice of termination for Cause was delivered as required by the Employment Agreement. Lumio paid no severance.

**Credit Card Allegations (¶¶ 38-45):**
Bankhead DENIES misuse of his corporate card. All charges on Bankhead's corporate card were legitimate business expenses submitted through Lumio's established expense reporting process. Lumio required all employees including Bankhead to submit expense reports for review and approval. Lumio reviewed Bankhead's submitted expenses monthly, reset his credit limit each month, and at no point during his employment did Lumio shut down, suspend, restrict, or raise any objection to Bankhead's corporate card or any submitted charge. By consistently reviewing, approving, and continuing to authorize Bankhead's card privileges with full knowledge of all submitted charges, Lumio ratified those charges as legitimate business expenses and waived any right to later claim they were improper. Lumio is estopped from characterizing as fraudulent charges it reviewed and approved on a monthly basis for the duration of Bankhead's employment. Furthermore, even if any charge were deemed improper — which Bankhead denies — the Employment Agreement required written notice and a ten-day cure period before any such conduct could constitute Cause or give rise to liability. No such notice was ever provided. The credit card charges must also be viewed in the context of the broader DECA-Lumio reconciliation, which Lumio's own Financial Controller confirmed in writing showed $3,200,000 owed by Lumio to DECA as of February 28, 2022, and which Lumio's own finance team was actively working to reconcile through at least November 2022.

**Lone Star Allegations (¶¶ 46-50):**
Bankhead DENIES each and every allegation relating to Lone Star Home Experience. Bankhead DENIES that Lone Star was a fraudulent vendor. Bankhead DENIES all allegations of fraud or intentional misconduct with respect to Lone Star. Bankhead did not establish Lone Star Home Experience, did not own or control any Lone Star bank account, did not have an ownership interest in Lone Star, and received no personal financial benefit from any payments Lumio made to Lone Star. Every payment Lumio made to Lone Star was made in accordance with Lumio's

own established payment processes and was based on a legitimate funded loan account, consistent with how all other accounts were paid.

**Goodleap / Receivables (¶¶ 51-63):**
Bankhead DENIES that he personally retained receivables belonging to Lumio. The Goodleap Home Improvement Financing Program Agreements are explicitly listed in the Bill of Sale as assigned assets transferred to Lumio at closing. Under APA Section 1.3(b)(i), Lumio expressly assumed all ordinary course liabilities relating to assigned assets after closing, including maintenance and warranty obligations whether arising before or after closing. The Goodleap clawback of funds from Lumio was a liability relating to an assigned asset that Lumio contractually assumed. The DECA Sellers had no obligation to indemnify Lumio for liabilities Lumio expressly assumed. Furthermore, Lumio never delivered an Officer's Certificate as required by APA Section 6.6 before asserting any claim or withholding any payment. Without that required Officer's Certificate, the indemnification process never legally commenced and Lumio's claims are procedurally barred. Any claim based on pre-closing representations and warranties is also time-barred by the APA's 18-month survival limitation, which expired June 10, 2023.

**Mio Home / Non-Compete (¶¶ 64-82):**
Bankhead DENIES each and every allegation relating to Mio Home. Bankhead has no connection whatsoever to Mio Home LLC. Bankhead was never employed by Mio Home LLC, never provided any services to Mio Home LLC, never held any ownership interest in Mio Home LLC, and was never compensated by Mio Home LLC in any capacity at any time. Bankhead had no role in the formation, operation, management, or business activities of Mio Home LLC. Bankhead DENIES that he solicited any Lumio employees or customers on behalf of Mio Home LLC or any other entity in violation of any enforceable covenant. Unlike his co-defendants, Bankhead has no affiliation with Mio Home LLC of any kind. The Trustee's non-compete and solicitation allegations against Bankhead individually are factually false and without basis.

## PART TWO: AFFIRMATIVE DEFENSES

**First Defense — Failure to State a Claim:**
The Complaint fails to state a claim upon which relief may be granted as to Bankhead individually. Bankhead was an employee without corporate financial authority. The APA obligations run to the LLC entities, not to Bankhead personally except as expressly specified.

**Second Defense — Contractual Time Bar (APA Section 6.1):**
All claims for indemnification or breach of representations and warranties under the APA are barred by the APA's express 18-month survival limitation. The Closing Date was December 10,

2021. The survival period expired June 10, 2023. All claims based on pre-closing representations and warranties are time-barred.

**Third Defense — Failure to Plead Fraud With Particularity (Rule 9(b)):**
The Trustee's sole avenue around the 18-month survival bar is the fraud and intentional misconduct carve-out of APA Section 6.4(d). Federal Rule of Civil Procedure 9(b), made applicable by Bankruptcy Rule 7009, requires fraud to be pled with particularity — specifying the who, what, when, where, and how of each alleged fraudulent act as to each individual defendant. The Complaint fails to plead fraud with the required particularity as to Bankhead individually. Vague and conclusory allegations of misconduct are insufficient to invoke Section 6.4(d) and avoid the 18-month survival bar.

**Fourth Defense — Failure to Deliver Officer's Certificate (APA Section 6.6):**
APA Section 6.6 required Lumio to deliver a signed Officer's Certificate to the DECA Sellers before making any indemnification claim. The certificate was required to specify the exact items claimed, the amounts, and the dates. Lumio never delivered an Officer's Certificate for any of the claims now asserted in the Complaint — not for the credit card charges, not for the Goodleap clawback, not for the alleged AR retention, and not for any other claim. Without the required Officer's Certificate, the contractual indemnification process never legally commenced. Lumio's failure to follow the mandatory claims procedure is fatal to all indemnification claims as a matter of contract.

**Fifth Defense — No Personal Liability Under APA:**
The APA is between Lumio HX, Inc. as buyer and the LLC sellers — DECA Living, LLC; Zenith Security, LLC; and Zenith Solar, LLC. Bankhead signed only in a shareholder capacity. Obligations under the APA run to and from the LLCs, not to Bankhead personally, except as expressly specified in the APA.

**Sixth Defense — No Payment Authority:**
Bankhead served as Senior Vice President of Sales, reporting to the Chief Revenue Officer. He did not have independent corporate authority to approve, authorize, or issue payments, commissions, or vendor disbursements. He cannot be held personally liable for payment decisions made by Lumio's finance and accounting departments.

**Seventh Defense — Prior Material Breach by Lumio:**
Lumio's failure to pay the post-closing installment of $1,458,721.20 due June 10, 2022; the installment of $1,458,721.20 due December 10, 2022; and the installment of $1,458,721.20 due June 10, 2023 — totaling $4,376,163.60 — constitutes a prior material breach of the APA that excuses any further performance obligations by the DECA Sellers and bars the Trustee's claims.

**Eighth Defense — Lumio's Assumption of Goodleap Liabilities (APA Section 1.3(b)(i)):**
The Goodleap Financing Program Agreements are explicitly listed in the Bill of Sale as assigned assets. Under APA Section 1.3(b)(i), Lumio assumed all ordinary course liabilities relating to assigned assets after closing, including maintenance and warranty obligations whether arising

before or after closing. The Goodleap clawback is a liability Lumio expressly assumed and cannot be charged back to the DECA Sellers or to Bankhead personally. This defense is independent of and not subject to the fraud carve-out of APA Section 6.4(d), which governs only the indemnification provisions of Article 6 and does not reach the assumed liabilities provisions of Article 1.

**Ninth Defense — Ratification, Waiver, and Estoppel (Credit Card):**
Lumio required monthly expense submissions, reviewed and approved those submissions, reset Bankhead's credit limit monthly, and never shut down, suspended, restricted, or objected to any charge during the entire period of Bankhead's employment. This conduct constitutes ratification of all charges as authorized business expenses, waiver of any right to later challenge those charges, and estops Lumio from characterizing as fraudulent conduct it reviewed and approved on a monthly basis. The Employment Agreement also required written notice and a ten-day cure period before any conduct could constitute Cause — no such notice was ever provided.

**Tenth Defense — Waiver, Estoppel, Laches, and Unclean Hands:**
The Trustee's claims are barred in whole or in part by waiver, estoppel, laches, and unclean hands. Lumio accepted the full benefits of the APA — acquiring the DECA Sellers' business assets, customer relationships, dealer networks, and revenue streams — while systematically failing to honor its payment obligations under that same agreement. Lumio's own internal records confirm its awareness of the amounts owed. It would be fundamentally inequitable to permit the Trustee to selectively enforce Lumio's rights under the APA while ignoring Lumio's own material breaches of that same contract.

**Eleventh Defense — No Basis for Non-Compete Claims Against Bankhead:**
The Trustee's non-compete and solicitation claims against Bankhead are factually false and without legal basis. Bankhead has no connection to Mio Home LLC of any kind — he was never employed by it, never provided services to it, never owned any interest in it, and was never compensated by it. Unlike his co-defendants, Bankhead has no affiliation with Mio Home LLC whatsoever. There is no factual foundation for the non-compete allegations against Bankhead individually and they should be dismissed.

---

**PART THREE: RECOUPMENT AND SETOFF**

---

**NOTICE OF RECOUPMENT AND SETOFF**

Bankhead hereby asserts recoupment and setoff against any amount the Trustee may recover in this proceeding, based on Lumio's failure to perform its own obligations under the same Asset Purchase Agreement and Employment Agreements that are the subject of the Trustee's claims.

These amounts arise from the identical transaction and course of dealing at the center of this adversary proceeding and constitute recoupment as a matter of law.

The following amounts are owed personally to Bankhead by Lumio under the same agreements the Trustee is seeking to enforce:

**Item 1 — Unpaid Post-Closing Payment (APA Section 2.1(b)(ii)):**
The APA required Lumio to pay $4,376,163.60 to the DECA Sellers in three equal installments: $1,458,721.20 due June 10, 2022; $1,458,721.20 due December 10, 2022; and $1,458,721.20 due June 10, 2023. Lumio paid none of these installments. No Officer's Certificate was delivered before any amount was withheld. Lumio never provided written notice of any basis for withholding any installment at the time payment was due. Bankhead's 50% ownership share of the unpaid post-closing payment is $2,188,081.80.

**Item 2 — Unpaid Earnout (APA Section 2.1(b)(iii)):**
The APA required Lumio to pay $500,000 per financial quarter for eight quarters, totaling $4,000,000, with the first payment due at the end of Q2 2022. Lumio paid none of the eight quarterly earnout installments. Lumio never provided written notice of any basis for withholding any earnout payment at the time each installment became due. Bankhead's 50% ownership share of the unpaid earnout is $2,000,000.

**Item 3 — Pre-Transaction Operational Advances:**
Between June 2021 and November 2021, DECA advanced $250,000 per month for five months, totaling $1,250,000, to fund pre-closing operational expenses at Lumio's direction and with an express promise of reimbursement confirmed in meetings attended by approximately 20 Lumio employees and executives including Lumio's CFO Wendell Laidley. Lumio never reimbursed these advances. Bankhead's 50% share is $625,000.

**Item 4 — DECA Reimbursements Confirmed by Lumio's Own Financial Controller:**
On March 23, 2022, Lumio's Financial Controller Wendi Kellam distributed a reconciliation to CFO Wendell Laidley, Cal Taylor, Oscar Luna, and John Bankhead confirming that $3,200,000 remained due and owing from Lumio to DECA as of February 28, 2022. This amount represents post-closing payroll advances made by DECA when Lumio lacked the cash infrastructure to meet its own payroll obligations, post-closing operational expenses charged to DECA's credit facilities because Lumio had not yet established its own corporate card infrastructure, and pre-closing inventory and operational purchases made by DECA on Lumio's behalf. These obligations are separate and distinct from the pre-transaction advances described in Item 3. Bankhead's 50% share is $1,600,000.

**Item 5 — Unpaid Severance (Employment Agreement Section 5.3):**
Employment Agreement Section 5.3 required Lumio to pay six months of base salary as severance upon termination without Cause. At $250,000 per year, this equals $125,000. Bankhead's employment was terminated on or about August 14, 2024. No written notice of termination for Cause was delivered as required by the Employment Agreement. No Cause

determination was made by the Board as required. Lumio paid no severance. Bankhead is owed $125,000 in unpaid severance.

**Item 6 — Undelivered Equity and Stock Options (APA Section 2.2):**
APA Section 2.2 and the Employment Agreement required Lumio to enter into a Stock Restriction Agreement with Bankhead for 2,666,666 shares of Lumio Holdings common stock, vesting over three years from closing with 25% credit as of the closing date. Additionally, Lumio confirmed in writing — through a November 2, 2023 email from Lumio Legal Operations Manager Angie Beacham — that Bankhead was entitled to 500,000 ISO options at an exercise price of $7.03. Lumio failed to properly issue, deliver, or honor these equity obligations. The value of this equity is to be determined at trial.

**RECOUPMENT SUMMARY**

| | |
|---|---|
| Post-closing payment (50% of $4,376,163.60): | $2,188,081.80 |
| Earnout (50% of $4,000,000): | $2,000,000.00 |
| Pre-transaction advances (50% of $1,250,000): | $625,000.00 |
| DECA reimbursements per Kellam reconciliation (50% of $3,200,000): | $1,600,000.00 |
| Unpaid severance: | $125,000.00 |

**TOTAL PERSONAL CASH RECOUPMENT:**          **$6,538,081.80**
Equity and ISO options:                              TBD at trial

The Trustee's collective claim against all defendants is approximately $4,866,943. Bankhead's personal cash recoupment of $6,538,081.80 exceeds the Trustee's entire collective claim by $1,671,138.80 before equity is counted. Any judgment entered in favor of the Trustee must be reduced to zero by recoupment, and to the extent Bankhead's recoupment exceeds the Trustee's recovery, Bankhead is entitled to judgment in his favor for the difference.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant John Bankhead respectfully requests that this Court:

a.  Dismiss the Complaint as to Bankhead individually for failure to state a claim;
b.  Enter judgment in favor of Bankhead on all causes of action;
c.  Alternatively, reduce any judgment against Bankhead to zero by application of recoupment and setoff;
d.  Enter judgment in favor of Bankhead for the amount by which his recoupment exceeds any recovery by the Trustee;

e.  Award Bankhead his costs of defense on the non-compete claims pursuant to the prevailing party fee-shifting provision of APA Section 7.7;

f.  Award Bankhead the value of his undelivered equity and ISO options as established at trial;

g.  Grant such other and further relief as this Court deems just and proper.

## RESERVATION OF RIGHTS

Bankhead expressly reserves all rights not specifically addressed herein, including the right to seek leave to assert additional defenses or claims as facts are developed through discovery, and the right to supplement this recoupment notice as additional amounts are identified.

Dated: _____ March     27 _____, 2026

Respectfully submitted,

_____

John Bankhead (Pro Se)
4326 Cobalt Bloom Ct
Arlington, TX 76005

_____

_____

## CERTIFICATE OF SERVICE

_____

_____

I hereby certify that on _____ March     27 _____, 2026, I served a true and correct copy of the foregoing by U.S. Certified Mail, postage prepaid, upon:

Clerk of the Court
United States Bankruptcy Court
824 N. Market Street, 3rd Floor
Wilmington, DE 19801

Robert J. Dehney / Matthew O. Talmo / Brenna A. Dolphin
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
Wilmington, DE 19801

Joseph A. Piesco / Edward Rooker
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

John Bankhead